May it please the court. The petitioner, Gurmeet Singh, in this case, filed for asylum, which was eventually denied by the immigration judge. If you could please keep your voice up. Oh, very well. Thank you. The petitioner's case turns on two issues. First one is credibility. The immigration judge first found that Mr. Singh was not credible and then decided in the alternative that if he was found credible, his claim was not plausible because he did not comport with country conditions as reflected in the State Department reports. Mr. Singh contends that the immigration judge abused his discretion in denying his application for asylum, first of all. Secondly, the immigration judge erroneously relied on country conditions report in the State – in the form of the State Department report to rebut or impugn respondents' otherwise credible testimony that he was arrested in India, he was mistreated by the Indian police, and that he fears for his life should he be returned there. The judge went into great lengths in giving a historical perspective of life in India in the past 25 years or so. However, none of that has any bearing on what happened to the respondent. In fact, the documents the judge relied on to a great extent was published in 1996 with a 1997 addendum prior to what respondents claimed happened to him in 2002. There is a question as to whether or not such reliance on a document that, one, is outdated, should be the basis for denying what was an otherwise credible testimony. And the petitioner in this case is of the opinion that the judge was clearly erroneous in his determination. Let me ask you, before we get to the credibility question, a question with respect to the asylum claim. The immigration judge denied the claim, as I understand it, as a matter of discretion, even if he were, as they say, on the assumption that he was credible, he said, nonetheless, I will deny as a matter of discretion. Was that properly appealed such that it is now before us that the asylum claim and the denial is a matter of discretion? I believe it was. And why is that so? The immigration judge's determination that a respondent fails to meet his burden of proof relies a great deal, as stated previously, on the State Department reports. No, but my question is narrower than that. Did you appeal the discretionary decision, say that he abused his discretion in denying asylum? I've gone over the brief filed on behalf of the petitioner in this case. And while the language, abuse of discretion, is not particularly addressed in the brief, the substance of the brief itself goes to the denial of the asylum application. And if the asylum application was denied strictly on discretionary grounds, then we have to look beyond the discretionary decision. So the brief is not about the words abuse of discretion. The judge relies on State Department reports to support his discretion, basically, to deny the application, which is what the brief basically attacks. Let me ask you this. Even if we could construe your brief to the BIA or the petitioner's brief to the BIA and the brief to us as having raised or challenged I.J.'s decision on denial of asylum in his discretion, would we have jurisdiction to review that decision, that discretionary determination? I believe so. Why isn't that committed to the discretion of the Attorney General? Well, this Court has jurisdiction to review final determinations by the Attorney General, in this case the Board of Immigration Appeals, when an asylum application is denied on discretionary grounds. The judge in this case denied this case in San Francisco. The case was held within the jurisdiction of the circuit. Therefore, this Court has jurisdiction to review that decision. I think the issue of discretion, the abuse of discretion was raised both to the BIA. It's not specifically addressed in the brief before this Court. But the substance of the brief, as stated previously, goes to challenge the immigration judge's decision denying the application for asylum. You have to infer that this is what the petitioner is challenging. It is the denial of the asylum application, and that is on discretionary grounds. There's no other basis for the judge to deny the application, because he stated, even if we agree that he's credible, I'm still going to deny it. And then it goes into a historical lesson about what happened in India and in Punjab in general. You see, once you've said that, he says, even if he's credible, I'm still going to deny it. That means that if we reverse the adverse credibility finding, he nonetheless has exercised his discretion to deny. So merely getting rid of the adverse credibility finding doesn't get you where you need to go with respect to the discretionary decision to deny asylum. The — this Court has held in Kaloubi v. Ashcroft, the 2004 case, that in a case where discretion is triggered, the BIA must state its reasons and show proper consideration of all the factors when weighing whether or not to deny the asylum application. And in this case, the judge, who is a law firm, did not do an analysis of any of the factors. He merely relies on country conditions report. He did not say, respondent, let's assume the petitioner is credible. Under the regulations that govern the discretionary decision-making with respect to either granting or denying asylum, one of the factors that the IJ is supposed to look at are conditions in the country. That is correct, but there's no indication here. Part of that discretionary decision. Yes, but there's no indication here. Looking at the conditions in the country also means the IJ has to look at other factors besides who is now in government. And the IJ has to look at where the respondent is supposed to — or why the respondent is supposed to be safe if he returns to his home country. There are factors that have been outlined by this Court in — that states that the judge or the BIA must look at one — any other serious harms. When we talk about internal relocation, any other serious harms the applicant may face if he sends to another part of the country. This all goes to country conditions. The only thing the judge states, and repeated in his decision, is that the 1996 asylum claims and country conditions states that Punjabis — or Sikhs, rather — live in other parts of India, at least 4 million of them. But that is based on the 1981 census. The judge does not go into an individualized analysis of this particular petitioner's case. He just gives general country conditions report. And while that is what he has to look at, he has to conduct an analysis, an individualized analysis of this particular petitioner's specific reasons for fear and persecution. What is it that you want us to do? Can your client live in other parts of India safely? There seems to be no discussion of that, whether he can live in some place besides Punjab and be safe. The immigration judge in this case does not provide any specific analysis. He just merely states that there are Sikhs that live in other parts of India that respond in a way that is safe. And that the petitioner in this case can go live anywhere in India, because there's no reason why the police should be interested in him. He does not satisfy the requirements of Rios v. Ashcroft, for example, that require an individualized analysis of what this particular petitioner's specific conditions were that forced him to live in India. The judge didn't do that in this case. And the BIA also didn't do any of that. They just accepted the judge's decision. And that is why this case at the very least should be remanded, because the judge did not conduct an individualized analysis of the petitioner's claim. But I believe the judge's decision should be reversed, because it is improperly based on country conditions alone. Okay. Why don't we hear from the government, and then we'll give you a chance to respond. Good morning, Your Honors. Joan Smiley from the Department of Justice here on behalf of the Attorney General. The only issue remaining in this case is whether substantial evidence supports the Board's decision that any presumption of future persecution was rebutted here by the clear evidence of changed country conditions in India. And you say that on the ground that you believe that any claim with respect to asylum has been waived? Yes. The petitioner's brief to the Ninth Circuit does not challenge the denial of asylum and the exercise of discretion. Let me ask you this as a background to that. I've been doing these cases for quite a long time, and I don't think I've ever seen a case in which the I.J. denies, as a matter of discretion. The cases I'm accustomed to seeing is the I.J. says the person is either eligible for asylum or not eligible for asylum. And the exercise of discretion as to whether or not to grant is exercised after we're all finished with it, and it goes back to the Attorney General. Maybe you can tell me how frequent it is that the I.J. does this. I'm surprised this came out of the blue to me. I've never seen it before. Well, I've been also handling these cases for a long time. I do see it occasionally. I cannot tell you what percentage of cases. It does happen. And there were reasons in this record, obviously, that led the judge to that conclusion. But here, it's very clear that the State Department country reports establish that Sikhs like Mr. Singh do not have a reasonable basis for fearing religious or political persecution. The State Department country report in the record, the one that was released on March 31, 2003, discusses the situation in the Punjab, that the pattern of disappearances that occur in the Punjab is very clear. And that's where the word earlier in the 1990s has ended. Let me back you up just a little bit. We have 2,000 for my. Yes, that's at pages 133 to 167 of the record, Judge Hall. And that report also states that human rights monitors in the Punjab have confirmed that many police officers have been prosecuted for past abuses, such as the murder of a Sikh. And that's where the word earlier in the 1990s has ended. And that report also states that human rights monitors in the Punjab have confirmed that many police officers have been prosecuted for past abuses, such as the murder of a Sikh. You don't go on to discuss whether he could live someplace else in India in this case, do you? There's no evidence about that. Excuse me, I'm sorry, I didn't hear you. There's no evidence that he could live in some other part of India other than the Punjab in this record? Well, yes, there is, Your Honor, at page 176 of the record. In the State Department report there, it indicates that 4 million Sikhs live outside of the Punjab with no problems from police or from terrorist groups. Our case law talks about doing an individualized assessment. How does this broad country report, and with respect to Judge Hall's specific question, how does that meet the standard that we've developed in our case law? Well, I believe the judge did do an individualized analysis here, and he also relied on the country reports that were in the record and the other two. Where does the judge take account of the matters that Mr. Singh complained about and then fit it into the country conditions report? Well, in his decision, for instance, he sets out the two arrests that Mr. Singh alleged occurred on August 5th, 2002, and December 10th, 2002. He discusses the arrests, and he discusses the past police abuses and the information in the record in the State Department report that indicates that these types of abuses have now been prosecuted, that the police responsible for these acts have been investigated, prosecuted, and that the situation in that regard is improving. Let me ask you another question, and then I want to come back to this in just a minute. Does the Department of Justice support the IJ's credibility finding? I couldn't tell from reading your brief. I gathered not. Our position is that the credibility finding is not at issue because the board assumed arguendo that Mr. Singh was credible. If you assume that he's credible, or even if you set aside the credibility finding, just as in asylum, in withholding, he's entitled to a presumption of a fear of future persecution if he were to return. Does that presumption at all make a difference in the analysis? Well, our argument is that that presumption has been rebutted in this case by the country conditions evidence in the record that the situation has improved. Let me ask you, assuming that he's waived the asylum question, is it the withholding question still before us, and isn't that the same issue? The withholding question, yes, is before you. And, again, the issue is whether any evidence of a presumption of future persecution was rebutted by this clear country evidence of changed conditions in India. And, again, the report, pages 203 and 204, indicates that the government in India has made a very concerted effort to stop this police abuse and that the abuse is declining significantly. It also indicates, at page 204 of the record, that membership in this group that Mr. Singh belonged to, Shiromani Akali Dal, or SAD, is not a ground for anticipating that mistreatment may occur, that many Sikhs in India now hold high-ranking positions in the military, in government, in the judiciary. How about the prime minister? Yes. Is the prime minister a Sikh now? I believe so, and there are several members of parliament that are also Sikhs. In addition, as I started to indicate earlier, the human rights monitors in Punjab have confirmed that many police officers have been prosecuted. Based on this record evidence, it was reasonable for the board and the immigration judge to find that these changed country conditions rebutted any presumption of future persecution from Mr. Singh. Now, if that's right, what I think that means is if there's sufficient evidence in this record to show changed country conditions. Yes. It seems to me that we have reached the end of the road for any withholding or indeed any asylum for Sikhs. That is to say, they can show that they have previously been persecuted, but all the government needs to do is to point to this report to say, well, that may be true, but because changed conditions in the country are such, we're sending you back. Is that right? Well, it's hard to say, because this report is available for every case now. It would be hard to answer that question and indicate that it's applicable to every case, because every case, of course, depends on the individual facts. You see, there we go. Why don't we have to go at the individual facts of this case, too, then? Well, I believe that the immigration judge did consider the individual facts and the context of the conditions in India. Now, when you say that, what do you point to beyond the country reports talking about the general conditions? Well, the other reports in the record. There's amnesty, international reports. But, you see, that's all the general stuff that's not specific to this individual. So you say, listen, the IJ did not only look at these reports, but considered the individual situation of this particular person. And where did the IJ do that with respect to this individual person? Well, I believe that in the judge's decision in this case, which is at pages 38 to 55 of the record, it's a rather lengthy decision. Yes, it is. He does discuss, really, with great specificity, all the allegations that Mr. Singh made at the hearing, the details of the arrests, the details of his life in India, the fact that his family has remained there unharmed. This court has... Didn't the IJ find the adverse credibility decision that he was not credible? Yes, he did. He found that he was not credible, but he did go on to state that, however, even if he were credible, then he would deny asylum in the exercise of discretion. And when the board affirmed the IJ's opinion, it specifically noted that it agreed that assuming that Mr. Singh was credible, any future persecution claim was rebutted by the country evidence. And here the court, over and over, has recognized that the State Department reports... Melina Estrada, which is a 2002 case, and we said there, we have said that a State Department report on country conditions, standing alone, is not sufficient to rebut the presumption of future persecution when a petitioner has established past persecution. Instead, we have required an individualized analysis, which Judge Fletcher keeps... And that's what I was looking for in the IJ's... Again, I think the immigration judge's decision does discuss the individualized facts that Mr. Singh presented, all of the allegations of what happened to him in India. And then he noted that despite those claims, these are the country conditions in India now. In a way, we may be imposing an impossible burden on the IJ. I mean, what's the IJ supposed to do with respect to individualized consideration beyond talking about, okay, this is what he claims happened to him. These are now the country conditions. But the burden we're asking is for, okay, not only what did happen to him, but in light of the country conditions, what will happen to him specifically as an individual, not just what generally happens to Sikhs, the 4 million of them located outside the Punjab. Because, well, number one, how easy will it be for him individually to relocate? And I assume that, and it's consistent with the country reports, I assume that you're not going to contest this. Some Sikhs moving outside the Punjab will nonetheless be the target of the Indian government because of their past behavior. Whether this person will be, I can't tell. Well, in fact, on page 176 of the record, in that portion of the State Department report that discusses the fact that 4 million Sikhs now live outside the Punjab, it indicates there have been no problems and that they can settle in these areas. They are not sought out. They're not targeted unless there's outstanding charges against them. And in this case, there's no record that there's outstanding charges against Mr. Singh. Therefore, it was reasonable for the administrative authorities to find that his fear of persecution would not exist countrywide. I apologize for taking you over time. I want to come back to the question raised by Judge Paez, and that is, where are we with respect to the adverse credibility finding? Do you, for purposes of the case in front of us, concede that he's credible? I'm not sure where you stand on that. Yes, the government subscribes to the board's decision that, assuming that he is credible, which the board did, that he still has not met his burden of proof. So we have not made an adverse credibility argument. I understand that. But are we allowed then to say, not merely assuming arguendo, but are we allowed to say the government has conceded that he is credible? Yes. Okay. So we assume credibility then. And not just when this goes back, they say, oh, now we're going to change our mind, and now we find he's not credible. You say that he has been, for purposes of this case and from here forward, he is credible? For purposes of this case to this point, we are making the argument that we are assuming his credibility. But that means if we say, well, okay, assuming credibility, he, nonetheless, there's not been an individualized determination, the board is then free to say, oh, well, you know, we're now going to pick that question up again, and we're going to find he's not credible. So the case is coming back to us again on credibility. Well, of course, we believe that the case should not be remanded. I understand that. My question is, if we say we assume for purposes of the case as it now stands before us that he is credible because the BIA so assumed, we hold, however, that the BIA erred in saying on the current record that it has been, that the presumption has been sufficiently rebutted. Are you telling me, then, that the BIA is perfectly free to reinstate its decision on the marriage merely by saying, okay, well, we're going to revisit the assumption, and we're going to hold that he is not credible, and then the case comes back up to us now on credibility grounds? Is that what's going to happen? It's hard for me to speculate as to what might be raised to the board, whether they will do a de novo review. I can't speak for them. If the board says, okay, we're now going to go back and revisit the assumption, and we now agree with the I.J. that he is credible. Excuse me. Now do you agree with the I.J. that he is not credible? Do we get the case back again? Actually, that would depend on whether the petitioner files a petition. Oh, yeah. Quit playing with me. No, no, I'm trying to be honest, Your Honor. It's hard to speculate what might happen. Let me go with all of the ifs then. If we send it back on the assumption that he's credible, if the board says, okay, now we're going to revisit that question, and we hold that he is not credible, we agree with the I.J., and if we then get a petition for review on that very question of credibility, do we then have to address that question? I think here that credibility is the law of the case, in effect. It has been established as to the past record. Oh, so in other words, they can't revisit it? Yes. So you now concede that from here forward credibility has been established and that on remand the BIA is not going to be permitted to say we reverse our assumption and we now hold that he is not credible? Is that what you're saying? I'm saying that the BIA cannot change the credibility as to what happened up until the board at this point. What happens if it does get sent back on remand, that, you know, it depends on what is argued in those briefs. But on the record that is established to this point, the law of the case is that he has been found. I think you've just equivocated again. One of the things I'm driving at is I'm trying to figure out is if we would hold were the question presented to us that the adverse credibility finding must be reversed, if we're going to do it sooner or later, we might as well do it now if there's a possibility that the BIA on taking it back will go the other way. We argue that the adverse credibility finding is irrelevant because the board did not rely on it. I understand that. Okay. Unless the panel has any further questions, we would rely on the brief that we have filed in the case. Okay. Thank you. One minute. If we assume credibility in this case, then the question is whether or not the government met its burden of rebutting the presumption that Mr. Singh will not face prosecution if he goes back to India. This Court has consistently held that State Department report is not sufficient evidence. The Court did so in Rano v. Ashcroft in 2002. The Court did so in Lee v. INS in 2002. The Court did so in Popova v. INS in 2001. The government is obliged to rebut the presumption by introducing evidence that on an individualized basis. Well, they do point to some information in the record that was testified to that focuses on Mr. Singh. Well, what they point to is. They do say he didn't appear to hold a position of prominence or authority. He never voted in any election. He appears apolitical. The extent of his political activities consists of attending ceremonies, helping to raise tents, helping to obtain groceries, asking others to join SAAD. He has never served any position of prominence or high profile. His immediate family has no political activity. His family still resides in India. There appears to be no reason that the police would have an interest in Respondent. Then they go down. The AIJ at the very end says Respondent claims he will be jailed, tortured, beaten, or killed if he returns to India. Additionally, he claims he will not be able to relocate to any place in India. This claim is not supported by the evidence. Indian citizens are free to move about and relocate. High profile individuals involved in the militancy are returning to India and are not being abused, beaten, and tortured. Sikhs who have been associated with separate militants or have supported militants may be detained and questioned by police. Why isn't that enough to do an individualized assessment? Because that's a clever word in Europe. This does not address this particular petitioner. He talks about petitioner's parents and family living in India. But there's no way on the record does he state that the parents were politically active, that they supported Sharobaniya Kalidhar Amritsar, the party that demands a separate Sikh state. There's no way on the record he says that. In fact, it says the IG acknowledges, and so does the brief for the respondent, that the family has no political involvement. Therefore, they're not similarly situated. The fact that they're in India and not facing any problems should not have a bearing whatsoever on the analysis of whether or not this particular petitioner will face persecution if he goes back to India. As far as the rest of the comments about the police not looking for or not persecuting the respondent because he's not a high-profile member of a political party, I don't think it's required anywhere in this court's precedent that the respondent has to be an official in a political party for persecution to be, for mistreatment by the police to be persecution. And simply because he's not a high-ranking member, it's not going to prevent the police from doing to him what they previously did. And there's an unfair burden to place on the respondent to then have to rebut that and say, you're not a leader of your party. Why should the police be interested in you? Why were they interested in him in the first place? Because he did some work for the party. That's all. Okay. Thank you very much. Thank you. The case of Singh versus, well, let me do it this way because we've got another Singh coming up. Gurmeet Singh versus Holder is now submitted for decision.
judges: Hall, Fletcher W. , Paez